```
            IN THE UNITED STATES DISTRICT COURT
            FOR THE MIDDLE DISTRICT OF GEORGIA
                      ATHENS DIVISION

BARRY GORDON IRWIN,                *

      Plaintiff,                   *

vs.                                *    CASE NO. 3:08-CV-02 (CDL)

JOSEPH GEIGER, et al.,             *

      Defendants.                  *
```

O R D E R

This action arises from Defendants' arrest of Plaintiff. Presently pending before the Court are Defendant Geiger's Motion for Summary Judgment (Doc. 21), the Motion for Summary Judgment of Defendants Bell and Wooster (Doc. 23), and the Motion for Summary Judgment of all Defendants in their official capacities (Doc. 25). For the reasons set forth below, the Court grants Defendants' motions as to the Plaintiff's federal claims. The Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims. Accordingly, the state law claims are remanded to the Superior Court of Clarke County.

SUMMARY JUDGMENT STANDARD

Summary judgment may be granted only "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). The party moving for summary judgment has the burden to show that there is no genuine issue of material fact. *Celotex Corp.*

*v. Catrett*, 477 U.S. 317, 323 (1986).  Once the summary judgment movant meets its burden, the burden shifts and the nonmoving party must produce evidence to show that there *is* a genuine issue of material fact.  *Id.* at 324.  The nonmoving party must "go beyond the pleadings," *id.,* and point the Court to "specific facts showing a genuine issue for trial," Fed. R. Civ. P. 56(e)(2); *accord Celotex Corp.*, 477 U.S. at 324.

The movant is entitled to summary judgment if, after construing the evidence in the light most favorable to the nonmoving party and drawing all justifiable inferences in favor of the nonmoving party, no genuine issues of material fact remain to be tried.  Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  It is not enough to have *some* alleged factual dispute; there must be a genuine issue of material fact to defeat a motion for summary judgment. *Anderson*, 477 U.S. at 247-48.  A fact is *material* if it is relevant or necessary to the outcome of the suit.  *Id.* at 248.  A factual dispute is *genuine* if the evidence would allow a reasonable jury to return a verdict for the nonmoving party—there must be more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *accord Anderson*, 477 U.S. at 248.

PRELIMINARY MATTERS RELATED TO PLAINTIFF'S FILINGS

Before turning to the factual background, the Court finds it necessary to address several issues related to Plaintiff's response

2

to Defendants' motions for summary judgment.  Defendants urge the Court to disregard Plaintiff's response to the motions for summary judgment, which consists chiefly of an affidavit and a response to Defendants' statement of material facts.  Defendants argue that the response was one day late.  The response was due on February 23. According to the docket, the affidavit and one of Plaintiff's three identical responses to Defendants' three identical fact statements were filed on February 23.  Therefore, the response was timely.

Defendants also point out that Plaintiff, who is an attorney admitted to practice before this Court, signed the summary judgment response and filed it via the Court's electronic docketing system despite the fact that he is represented by counsel.  While it is generally the practice of this Court, particularly in criminal cases, to ignore *pro se* submissions from a party who is represented by counsel, the Court will not strike Plaintiff's response in this case.

Finally, Defendants urge the Court to deem their Statement of Material Facts to be admitted pursuant to Local Rule 56 because Plaintiff failed to point the Court to record evidence in his denial of certain statements of fact proffered by Defendants.  Local Rule 56 requires the nonmovant to admit or deny the movant's statement of material facts.  However, the local rule does not clearly provide that denials will be disregarded if the nonmovant fails to cite to record evidence in support of his denials.  Thus, the Court does not deem admitted those statements that Plaintiff specifically denied. The Court hastens to add, however, that once Defendants demonstrate

3

that the undisputed evidence authorizes judgment as a matter of law in their favor or that no evidence exists to support Plaintiff's claims, then Plaintiff has an obligation under Federal Rule of Civil Procedure 56 to point to record evidence that creates a genuine issue of material fact. *See* Fed. R. Civ. P. 56(e)(2); *see also Celotex Corp.*, 477 U.S. at 324.

### FACTUAL BACKGROUND

Viewing the evidence in the light most favorable to Plaintiff reveals the following.

On December 8, 2005, Plaintiff parked his vehicle in a parking lot of the Athens-Clarke County ("Athens" or "City") Meter Management Building, which is located at 1025 Alexander Street in Athens, Georgia.[1] The parking lot, which is unfenced, contains six spaces for use by some of the meter management employees and by visitors to the building. According to Plaintiff, the small, unfenced parking lot does not contain any signs that the parking lot is restricted to meter management employees and their visitors, and Plaintiff assumed that the parking lot was for public use. (Pl.'s Resp. to Defs.' Statement of Facts ¶ 4 [hereinafter Pl.'s SOF]; Pl.'s Dep. 13:4-5, Sept. 18, 2008.)

The parking lot was near a path, which was one of two routes that led to Plaintiff's brother's property. Plaintiff kept his goats

---

[1] Plaintiff does not seriously dispute that the parking lot was on Athens-Clarke County property, but he does appear to argue that it was a public parking lot and that no one had authority to prevent him from parking there. Plaintiff points to no evidence in support of this claim.

4

on that property. In March of 2005, Plaintiff began parking in the meter management parking lot when he went to feed his goats via the path route. (Bowden Dep. 8:14-23, Nov. 19, 2008; Pl.'s Dep. 13:4-11, 14:25-15:17.) Cathy Bowden, a meter management employee, first saw Plaintiff park in the meter management parking lot during March of 2005. (Bowden Dep. 8:14.) She told Plaintiff that he could not park there because the parking lot was only to be used by meter management employees and visitors to the meter management building. (*Id.* at 8:16-23.) Bowden saw Plaintiff park in the meter management parking lot again several other times during 2005, and she reminded him that he could not park there because it was government property. (*Id.* at 16:9-17:13.) When Bowden confronted Plaintiff, Plaintiff became agitated, screamed at Bowden (though Bowden could not understand what Plaintiff was saying), and continued on his way. (*E.g., id.* at 17:17-20.) After one such confrontation in May of 2005, Bowden called Gary Duck, director of the Department of Public Utilities, and told him about the incident. Duck told Bowden to call the police. Bowden did call the police, but officers did not arrive on the scene until after Plaintiff had left. After that, Bowden called the police each time she saw Plaintiff park in the meter management parking lot; but before December 8, 2005, Plaintiff left the scene before police arrived.

On December 8, 2005, Bowden observed Plaintiff's vehicle in the parking lot and called the police. Defendants Bell and Wooster—both

5

uniformed Athens-Clarke County police officers—were dispatched to the scene to investigate a trespassing complaint.  Bowden told the officers that Plaintiff had been parking in the meter management parking lot without permission and that she had previously told him that he was not allowed to park there.  Shortly after Bell and Wooster arrived, they saw Plaintiff returning to the parking lot.  They told Plaintiff they had received a complaint about his presence in the parking lot and asked Plaintiff what he was doing there.  Plaintiff spoke with the officers for approximately ten minutes and told them, among other things, that he was there to feed goats on his brother's property.  (Pl.'s Dep. 30:8-9, 30:25-31:6.)  In the meantime, Defendant Geiger, another uniformed Athens-Clarke County police officer, also responded to the scene.  He spoke with Bowden, who identified herself to Geiger as an employee who worked in the meter management building.  Bowden told Geiger that Plaintiff had been parking in the meter management parking lot without permission and that she had previously told Plaintiff to stop parking there.

   While the officers were present, Bowden told Plaintiff that he was barred from the meter management parking lot for five years.  Plaintiff walked toward Bowden, yelling, "[Y]ou can't bar me . . . who died and made you king, it's not my day to draw your bath, Your Royal Highness."  (*Id.* at 34:11-15.)  Plaintiff then walked away from Bowden and toward his vehicle.  At that point, Bell asked Plaintiff for his identification, which Bell needed to complete the barring

6

process.[2]  (Bell Dep. 13:9-10, Nov. 19, 2008; Geiger Aff. ¶ 4, Jan. 14, 2009.)  It is undisputed that Plaintiff did not give the officers his identification.  According to Plaintiff, Geiger ran up to Plaintiff, got in his face and told Plaintiff to leave.  (Pl.'s Dep. 34:20-22.)[3]  Plaintiff told Geiger, "[Y]ou know, you just committed assault, I was in fear of immediate bodily harm, you know."  (*Id.* at 35:1-4.)  At that point, Geiger told Plaintiff he could not leave, and it is undisputed that Plaintiff reached into his vest pocket. Geiger, thinking that Plaintiff might have a concealed weapon in his vest, grabbed Plaintiff's hand while his hand was inside the vest pocket.  (Geiger Aff. ¶ 5.)  As it turns out, Plaintiff only had a cell phone in the vest pocket.

Geiger arrested Plaintiff for misdemeanor obstruction of a law enforcement officer.  (*Id.* ¶ 6.)  Geiger handcuffed Plaintiff, and though the handcuffs were not too tight Plaintiff was uncomfortable because of the way Geiger pressed down on the handcuffs; when Plaintiff complained, Geiger backed off.  (Pl.'s Dep. 66:10-25.) Plaintiff did not "have any outward, visible signs that would need treatment," and he did not seek medical care for any injuries he claims to have sustained during the arrest.  (*Id.* at 66:4-15.)

---

[2] Plaintiff argues in his response to Defendants' statement of facts that no one asked him for his identification, (*see* Pl.'s SOF ¶ 26), but he points to no record evidence on this point.

[3] According to Defendants, no one ever told Plaintiff that he could leave the scene, and one of the officers told Plaintiff that he could *not* leave.  (Bell Dep. 13:21-25.)

Neither Bell nor Wooster stopped Geiger from arresting or handcuffing Plaintiff.

Plaintiff brings official capacity claims against all Defendants and individual capacity claims against Geiger, Bell, and Wooster for false arrest and excessive force in violation of the Fourth Amendment.  (Compl. ¶¶ 27-34.)   Plaintiff also brings state law claims for false arrest (*id.* ¶¶ 15-20), assault (*id.* ¶¶ 21-23), and battery (*id.* ¶¶ 24-26).

DISCUSSION

**I.   Plaintiff's § 1983 Claims**

To make a case under § 1983, Plaintiff must prove that Defendants, acting under color of state law, deprived Plaintiff of a right, privilege, or immunity secured by the Constitution or a federal law.  *See* 42 U.S.C. § 1983.  It is undisputed that the officers acted under color of state law when they arrested Plaintiff on December 8, 2005.  Plaintiff contends that the officers violated Plaintiff's Fourth Amendment right to be free from unreasonable seizures and excessive force.

A.   Individual Capacity § 1983 Claims

Plaintiff contends that Geiger arrested Plaintiff without probable cause, that Geiger used excessive force during the arrest, and that Bell and Wooster had a duty to intervene but did not do so. Plaintiff asserts § 1983 claims against Bell, Geiger, and Wooster in

8

their individual capacities, and the officers argue that they are entitled to qualified immunity.

Qualified immunity shields public officers acting within the scope of their discretionary authority from liability so long as their acts do not violate clearly established law. *Pearson v. Callahan*, 129 S. Ct. 808, 815 (2009); *accord Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "The purpose of this immunity is to allow government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation . . . protecting from suit all but the plainly incompetent or one who is knowingly violating the federal law." *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002) (internal quotation marks omitted).

Where, as here, an official acted within the scope of his discretionary authority when he took the challenged action, the plaintiff must show that the official's conduct violated clearly established law.[4] *Case v. Eslinger*, 555 F.3d 1317, 1325 (11th Cir. 2009). In determining whether the official violated clearly established law, there are two key questions: (1) do the facts alleged show that the official's conduct violated a constitutional right? and (2) was the right clearly established at the time of the

---

[4] "A government employee has acted within his . . . discretionary authority if objective circumstances show that the challenged actions occurred in the performance of the employee's duties and within the scope of this authority." *Boyce v. Andrew*, 510 F.3d 1333, 1341 (11th Cir. 2007) (per curiam) (internal quotation marks omitted). Plaintiff does not appear to dispute that Bell, Geiger, and Wooster were within the scope of their discretionary authority when they arrested him.

9

official's action?  *Id.* at 1326.  The Court has discretion to decide upon the order in which to answer these questions.  *Pearson*, 129 S. Ct. at 821.

>    *1.   Individual Capacity § 1983 Claims Against Geiger*

Plaintiff contends that Geiger violated his right to be free from unreasonable seizures because Geiger arrested him without probable cause.  The reasonableness of an arrest "turns on the presence or absence of probable cause."  *Case*, 555 F.3d at 1326.  The existence of probable cause at the time of arrest bars a § 1983 action for false arrest.  *Id.* at 1326-27.  "Probable cause to arrest exists when law enforcement officials have facts and circumstances within their knowledge sufficient to warrant a reasonable belief that the suspect had committed or was committing a crime."  *Id.* at 1327 (internal quotation marks omitted).  "This probable cause standard is practical and non-technical, applied in a specific factual context and evaluated using the totality of the circumstances."  *Skop v. City of Atlanta, Ga.*, 485 F.3d 1130, 1137 (11th Cir. 2007).

"Absent probable cause, an officer is still entitled to qualified immunity if arguable probable cause existed."  *Case*, 555 F.3d at 1327 (citing *Lee*, 284 F.3d at 1195).  "Arguable probable cause exists where reasonable officers in the same circumstances and possessing the same knowledge as the Defendant could have believed that probable cause existed to arrest."  *Id.* (internal quotation marks omitted).  "This standard recognizes that law enforcement

officers may make reasonable but mistaken judgments regarding probable cause but does not shield officers who *unreasonably* conclude that probable cause exists." *Skop*, 485 F.3d at 1137.

"Whether an arresting officer possesses probable cause or arguable probable cause naturally depends on the elements of the alleged crime and the operative fact pattern." *Id.* at 1137-38 (internal citation omitted). Here, Geiger suggests that there are two possible crimes for which Plaintiff could have been arrested: obstructing a police officer in violation of O.C.G.A. § 16-10-24 and criminal trespass in violation of O.C.G.A. § 16-7-21. If Geiger had probable cause or arguable probable cause to arrest Plaintiff for either offense, he is entitled to qualified immunity.[5] *See Skop*, 485 F.3d at 1138.

Under Georgia law, a person commits the offense of criminal trespass when he "knowingly and without authority" enters the land or premises of another person after receiving notice from the owner or rightful occupant that such entry is forbidden. O.C.G.A. § 16-7-21(b)(2). "Premises of another person" includes property owned by a city or county and used for public purposes. O.C.G.A. § 16-1-3(12) (defining "person" to include governments); *accord E.P. v. State*, 130

---

[5] An arrest's validity "does not turn on the offense announced by the officer at the time of the arrest." *Lee*, 284 F.3d at 1195-96 (internal quotation marks omitted). When an officer makes an arrest "which is properly supported by probable cause to arrest for a certain offense, neither his subjective reliance on an offense for which no probable cause exists nor his verbal announcement of the wrong offense vitiates the arrest." *Id.* at 1196 (internal quotation marks omitted).

11

Ga. App. 512, 512, 203 S.E.2d 757, 758 (1973). Here, Geiger responded to the scene based on a complaint of trespassing. He spoke with an employee who worked in the meter management building, who told him that the parking lot was restricted to meter management employees and visitors. The employee also told Geiger that Plaintiff had been parking in the meter management parking lot without permission and that she and other employees had previously told Plaintiff to stop parking there. Based on the totality of the circumstances, the Court concludes that Geiger had at least arguable probable cause to arrest Plaintiff for criminal trespass.[6] Accordingly, Geiger is entitled to qualified immunity as to Plaintiff's § 1983 false arrest claim.

Having found that Geiger was permitted to arrest Plaintiff, the Court must next determine whether Geiger used excessive force during the arrest when he pressed down on the handcuffs. This claim must be analyzed under the Fourth Amendment's objective reasonableness standard. *Jackson v. Sauls*, 206 F.3d 1156, 1169 (11th Cir. 2000) (citing *Graham v. Connor*, 490 U.S. 386, 395 (1989)). The right to make an arrest "necessarily carries with it the right to use some

---

[6] Plaintiff's argument appears to be either that Defendants could not prohibit him from parking in the meter management parking lot or that Plaintiff did not have prior notice from someone with appropriate authority that the parking lot was restricted to meter management employees and their visitors. However, based on what Geiger knew at the time of the arrest, Geiger had probable cause to believe that Plaintiff was trespassing. Plaintiff points to no evidence that Geiger did not adequately investigate the incident or that Bowden's statements were not sufficient to create at least arguable probable cause for a criminal trespass arrest.

12

degree of physical coercion or threat thereof to effect it." *Graham*, 490 U.S. at 396. The use of force must be judged on a case-by-case basis "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.*

> Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers . . . violates the Fourth Amendment. The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation.

*Id.* at 396-97 (internal quotation marks and citations omitted).

In determining whether the use of force was objectively reasonable, the courts consider a variety of factors, including: "(1) the need for the application of force, (2) the relationship between the need and the amount of force used, (3) the extent of the injury inflicted and, (4) whether the force was applied in good faith or maliciously and sadistically." *Slicker v. Jackson*, 215 F.3d 1225, 1233 (11th Cir. 2000) (internal quotation marks omitted). Here, during the course of Plaintiff's arrest, Geiger handcuffed Plaintiff. Though they were not too tight, Plaintiff was uncomfortable because of the way Geiger pressed down on the handcuffs. When Plaintiff complained, Geiger backed off. Plaintiff suffered no injuries such as skin abrasions, and he did not seek medical attention; at most, he was uncomfortable for a short period of time. "The minor nature of this injury reflects that minimal force was used to apply the handcuffs." *Gold v. City of Miami*, 121 F.3d 1442, 1446 (11th Cir.

13

1997) (per curiam) (finding no excessive force where suspect was tightly handcuffed for twenty minutes and suffered skin abrasions). These circumstances would not inevitably lead a reasonable officer in Geiger's position "to conclude that the force used to apply the handcuffs was unlawful." *Id.* at 1447. Therefore, Geiger is entitled to qualified immunity on Plaintiff's excessive force claim.

    *2. Individual Capacity § 1983 Claims Against Bell and Wooster*

Plaintiff contends that Bell and Wooster had a duty to intervene when witnessing Plaintiff's arrest. In general, an officer can be held liable under a Fourth Amendment theory if he is present at the scene and is in a position to intervene to prevent another officer's use of excessive force but fails to do so. *Crenshaw v. Lister*, 556 F.3d 1283, 1293-94 (11th Cir. 2009) (per curiam). Here, as discussed above, Geiger did not violate Plaintiff's Fourth Amendment rights because Geiger had arguable probable cause to arrest Plaintiff and did not use excessive force when he arrested Plaintiff. Therefore, Bell and Wooster had no obligation to intervene, and they are entitled to summary judgment based on qualified immunity.

## II.  Official Capacity Claims

Plaintiff brings official capacity claims against the three on-the-scene officers, as well as Defendant Lumpkin, the Athens police chief.[7] The official capacity claims are treated as claims against

---

[7]Defendant Lumpkin was not on the scene and did not participate in the arrest. Plaintiff did not assert any individual capacity claims against Lumpkin or point to any evidence that would support any individual

14

the officers' employer: Athens-Clarke County. *See Smith v. Allen*, 502 F.3d 1255, 1271-72 (11th Cir. 2007). For Plaintiff to state a § 1983 claim against Athens-Clarke County, he must show that he suffered a constitutional violation as a result of the City's unlawful "policy or custom."[8] *Skop*, 485 F.3d at 1145; *see also Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 694 (1978). Plaintiff contends that his injury was the result of improper training and supervision. (Compl. ¶ 33.) To sustain that claim, Plaintiff must "bring forth some evidence of a pattern of improper training to sustain his claim, and he must show that [Athens] was aware of the deficiencies in the program." *Mercado v. City of Orlando*, 407 F.3d 1152, 1161 (11th Cir. 2005); *see also Cook ex rel. Estate of Tessier v. Sheriff of Monroe County, Fla.*, 402 F.3d 1092, 1116 (11th Cir. 2005) ("A failure to adequately train municipal employees constitutes an actionable policy or custom for § 1983 purposes 'only where the failure to train amounts to deliberate indifference to the rights of persons with whom the [employees] come into contact.'" (alteration in

---

capacity claims—including supervisory liability claims—against Lumpkin. *Cf. Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003) (noting that supervisory liability under § 1983 occurs "either when the supervisor personally participates in the alleged unconstitutional conduct or when there is a causal connection between the actions of a supervising official and the alleged constitutional deprivation").

[8]As discussed above, it is doubtful that Plaintiff suffered a constitutional violation. As the Court explains below, even if Plaintiff had suffered a constitutional violation, he did not point to sufficient evidence to establish that Athens should be held liable.

15

original) (quoting *City of Canton v. Harris*, 489 U.S. 378, 388 (1989))).

Plaintiff has not pointed the Court to any policy or custom that had any connection to his injury.  He has not brought forth any evidence of a pattern of improper training or supervision.[9]  Because Plaintiff has not introduced any evidence that an Athens custom or policy was a "moving force" behind his injury, Defendants are entitled to summary judgment as to Plaintiff's § 1983 claims against them in their official capacities.

## CONCLUSION

As discussed above, the Court grants Defendants' motions for summary judgment (Docs. 21, 23 & 25).  The Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims, and those claims are remanded to the Superior Court of Clarke County.

IT IS SO ORDERED, this 4th day of August, 2009.

    S/Clay D. Land
      CLAY D. LAND
UNITED STATES DISTRICT JUDGE

---

[9] In his affidavit, Plaintiff suggests that Athens routinely failed to supervise its police officers because (1) Plaintiff filed a written complaint about an officer for providing false testimony but did not receive a response (Pl.'s Aff. ¶ 9, Feb. 23, 2009); (2) sometime in 2008 or 2009, a police officer approached Plaintiff in a threatening manner and threatened to arrest him (*id.* ¶ 10); and (3) in January of 2009, Plaintiff had a disagreement with a police officer over the way Plaintiff attempted to retrieve his stolen cat (*id.* ¶ 11).  These assertions do not establish that Athens had a policy or custom of improper training and supervision as of December 8, 2005 with regard to the City's arrest procedures.